JODI LINKER
Federal Public Defender
DANIEL P. BLANK
Senior Litigator
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:   (415) 436-7700
Facsimile:    (415) 436-7706
Email:          Daniel_Blank@fd.org

Counsel for Defendant CARRIER

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: CR 23–0301 WHA |
| Plaintiff, | **DEFENDANT'S SENTENCING MEMORANDUM; REQUEST FOR EVIDENTIARY HEARING** |
| v. | |
| DAVID ALLEN CARRIER, | Court:   Hon. William Alsup |
| Defendant. | Date:    March 26, 2024 |
| | Time:    10:00 a.m. |

**ARGUMENT**

In this unusual case, Defendant David Carrier accepted a plea agreement from the government providing for a joint recommendation of a non-custodial sentence, which recognized that while the two statements at issue made to elected officials—regarding the genuine societal problem of illegal immigration leading to rampant drug sales—were vulgar and highly offensive, they were almost entirely protected by the First Amendment.  At most, there was just one or two sentences in each statement properly covered by charged criminal offense of Threats Against a Federal Official in violation of 18 U.S.C. § 115(a)(1)(B).  Rather than put the government to its proofs at a trial, Mr. Carrier quickly realized that he had approached this issue of legitimate concern in the wrong way.  While on pretrial release, Mr. Carrier has overcome some challenges to live independently and maintain full-time employment.[1]  The Court should give Mr. Carrier the benefit of his bargain and follow the recommendation of the government for a sentence of four years of probation.

I.   **CORE POLITICAL SPEECH IS PROTECTED EVEN IF VULAR OR OFFENSIVE**

In January 2021 and June 2022, Mr. Carrier left voicemail messages for his political representatives articulating his strong objection to governmental policies that, in his opinion, were recklessly permitting illegal immigration resulting in highly dangerous drug trafficking in this country.  PSR ¶¶ 5-10.  It cannot be denied that Mr. Carrier's messages trying to persuade these political officials to change their positions were phrased using vulgar and highly offensive language.  *See id.*  However, the Supreme Court has long held that the "right to free speech, of course, includes the right to attempt to persuade others to change their views, and may not be curtailed simply because the speaker's message may be offensive to his audience," especially when the speech is directed for example at a government official who may simply ignore the messages.  *Hill v. Colorado,* 530 U.S. 703, 716 (2000); *see also id.* (noting that the First Amendment protects a "protester" who is "expressing his opposition to government policy in vulgar language," especially where any offended person may simply ignore the message) (citation omitted).  Mr. Carrier's voicemail messages only amounted to criminal conduct to the extent that they constituted "true threats."

---

[1] The Final Presentence Report inaccurately states that Mr. Carrier is unemployed.  PSR ¶¶ 4, 76.  To the extent that the Court should rely upon that statement, an evidentiary hearing should be convened.

For a defendant to be guilty of making Threats Against a Federal Official in violation of 18 U.S.C. § 115(a)(1)(B), the government must prove his statement, no matter how vulgar or offensive, was in fact "an objectively defined 'true threat,' *i.e.,* one that 'a reasonable person would foresee . . . would be interpreted by those to whom the maker communicates the statement as a serious expression of intent to harm or assault." *United States v. Ehmer,* 87 F.4th 1073, 1121 (9th Cir. 2023) (quoting *United States v. Orozco-Santillan,* 903 F.2d 1262, 1265 (9th Cir. 1990)); *see also United Bagdasarian,* 652 F.3d 1113, 1117 (9th Cir. 2011) ("In order to affirm a conviction under any threat statute that criminalizes pure speech, we must find sufficient evidence that the speech at issue constitutes a 'true threat' as defined in [*Virginia v. Black,* 538 U.S. 343 (2003)].").

Here, as recognized by the government, the great majority of the verbiage in Mr. Carrier's voicemails messages did not constitute "true threats." At most, there was just one or two sentences in each set of recorded statements that could conceivably have been interpreted as a serious expression of intent to harm or assault. Mr. Carrier, for his part, quickly came to realize from the very start of this case that he had approached this issue of legitimate concern in the wrong way. As a result, both parties saw the wisdom in a quick resolution of the case, wherein Mr. Carrier accepts responsibility for his offense while the government agrees to recommend a non-custodial sentence. Both parties have fully complied with this agreement. Accordingly, the Court should grant Mr. Carrier the benefit of his bargain and impose the recommended sentence of four years of probation, especially in light of the extent to which Mr. Carrier has already demonstrated significant rehabilitation, as discussed in detail below.

**II.    CARRIER HAS ALREADY DEMONSTRATED SIGNIFICANT REHABILITATION**

Before the commencement of this case, Mr. Carrier, age 44, was having trouble with handling the stressors in his life, both the immediate (co-parenting a disabled daughter in Concord, California) and the more remote (illegal immigration resulting in drug trafficking and other crimes). While on pretrial release, however, Mr. Carrier has settled in to a stable and productive groove that would be a shame to disrupt. Along these lines, Mr. Carrier is currently in full compliance with all terms of his pretrial release, including maintaining full-time employment and his own modest residence in San Francisco, as well as drug testing and reporting as directed to the pretrial services officer. PSR ¶¶ 4,

70; *see also* Attachment A (photo of residence).  Although Mr. Carrier occasionally smoked marijuana before this case was charged, he has not used any drugs since then, without the need for any drug treatment or counseling.  PSR ¶¶ 72, 74.[2]  (Mr. Carrier stopped drinking alcohol 10 years ago when he was diagnosed with liver disease.  PSR ¶¶ 71, 74.)

      Initially while on pretrial release in San Francisco, Mr. Carrier tried to find work at a barbershop, because he has been a master barber since 2013 and previously had successfully operated his own barbershop in Concord.  PSR ¶¶ 75-76.  However, Mr. Carrier found working in a barbershop in San Francisco's Tenderloin neighborhood to be excessively stressful, and so he took a full-time job instead with Urban Alchemy, earning $23 per hour cleaning the local streets and assisting with overdose prevention, which was similar to volunteer work he had done many years before in Louisiana.  *See* PSR ¶¶ 68, 76.  After nearly three months at Urban Alchemy, Mr. Carrier then took a new job earning $35 per hour as a certified maintenance technician with Preferred Solutions.[3]

      Ultimately, Mr. Carrier would like to reconnect with his daughter and her mother.  PSR ¶ 69.  Proceedings relating to a stay-away order are scheduled for March 20, 2024.  PSR ¶ 60.  In the meantime, as noted above, Mr. Carrier remains in compliance with all terms and conditions of his pretrial release.  Along these lines, Mr. Carrier agrees with the government that the purposes of the Sentencing Reform Act, including protecting the public and providing the defendant with needed educational or vocational training and support, are best achieved through a non-custodial sentence of four years of probation.  *See* Dkt. 34 at 5-9.

/ / /

---

[2] Mr. Carrier's lone positive test for marijuana on October 18, 2023, just ten days after his arrest, is consistent with using prior to his arrest and does not indicate new marijuana use after his release.  PSR ¶ 74.  While residing at the halfway house, Mr. Carrier also had one isolated positive test on January 19, 2024, for cocaine, a drug which he never used in his life.  *Id.; see also id.* ¶ 4.  Mr. Carrier steadfastly maintained that this test result must have been a false positive.  *See id.*  Although at that point he was no longer allowed to reside in the halfway house, the magistrate judge, with the support of the government and the pretrial services officer, amended his conditions of release to allow him to live on his own in San Francisco, and he has had no positive drug tests of any kind since then.

[3] It is unclear why the Presentence Report inaccurately states that Mr. Carrier "lost" his job with Urban Alchemy.  PSR ¶¶ 4, 76.  As noted above, to the extent that there is any factual dispute about Mr. Carrier's employment status, it is respectfully requested that the Court convene an evidentiary hearing.

DEFENDANT'S SENT. MEMO
*CARRIER*, CR 23–0301 WHA

3

# CONCLUSION

For the foregoing reasons, the Court should sentence Mr. Carrier to a sentence of four years probation.

Dated:   March 19, 2024                    Respectfully submitted,

JODI LINKER
Federal Public Defender
Northern District of California

　　　　　　　　　　/S
DANIEL P. BLANK
Senior Litigator